IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PPL ENERGYPLUS, LLC, et al.      *

           Plaintiffs      *

      vs.            *    CIVIL ACTION NO. MJG-12-1286

DOUGLAS R. M. NAZARIAN, in his  *
 official capacity as Chairman
 of the Maryland Public Service  *
 Commission, et al.
                  *
           Defendants
*    *    *    *    *    *    *    *    *

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

     The Court has before it the Motion to Dismiss or

Alternatively Motion for Summary Judgment [Document 36] filed by

"the PSC Defendants,"[1] Intervenor-Defendant CPV Maryland, LLC's

Motion to Dismiss [Document 43] and the materials submitted

relating thereto.  The Court has held a hearing and had the

benefit of the arguments of counsel.


I.   THE CONTEXT – PLAINTIFFS' VERSION

     The Court is, for present purposes, stating an overview of

the "facts," accepting Plaintiffs' position based upon the

Complaint, Plaintiffs' submissions and arguments.  In so doing,

---

[1]    Douglas R. M. Nazarian, Harold Williams, Lawrence Brenner,
Kelly Speakes-Backman, and W. Kevin Hughes, all in their
official capacities with the Maryland Public Service Commission.

the Court necessarily is "painting with a broad brush,"
simplifying complex matters and, for present purposes, not
accepting Defendants' positions.

Maryland is part of a regional wholesale electricity market
including 13 states and the District of Columbia ("the PJM
Market") administered by PJM Interconnection, LLC ("PJM").  The
Federal Energy Regulatory Commission ("FERC") exercises
exclusive jurisdiction over the operation of the PJM Market.
Accordingly, FERC adopted a competitive market-based auction for
setting interstate wholesale energy and capacity[2] prices in the
PJM region, and approved the rules governing the auction.  See
Compl. ¶¶ 4, 33.  The FERC-approved capacity auction employs the
"reliability pricing model" ("RPM").  Under the RPM, parties buy
and sell capacity three years in advance of when it is needed.

In PJM capacity auctions,[3] demand for capacity is determined
by PJM, considering the amount of electricity that electric
distribution companies and other retail suppliers are expected
to require in three years.  Compl. ¶ 34.  The supply of capacity
is determined by the bids of electric generators, with each
generator bidding an amount of capacity it is willing to sell at
a price it is offering to receive.  Compl. ¶ 34.  The price of

---

[2]     The term "capacity" as used herein refers to a commitment
to provide power when needed to meet a future demand.
[3]     Referred to as the "Base Residual Auction."

capacity is set by the intersection of supply and demand and is referred to as the "clearing price." Id.

A generator bidding at or below the clearing price "clears" the auction and receives the clearing price for its capacity. Generators must offer to sell the electricity they generate in the separate PJM energy market. Id. The clearing price is the only wholesale capacity price that FERC has approved for capacity that clears the auction.

Plaintiffs allege:

> FERC's goal in adopting RPM was to create economic incentives for meeting the region's capacity needs. Compl. ¶ 3. According to the theory underlying RPM, if consumer demand for electricity is expected to be high, the EDCs' and other retail suppliers' demand for capacity will increase, putting upward pressure on the RPM clearing price. This provides an incentive for generation resources to offer more capacity. When the supply of capacity increases, there is a downward pressure on the RPM clearing price. If the market price for capacity declines, capacity resources will have reduced incentives to participate in the market. See id. Thus, the PJM capacity auction is designed to provide the marketplace with incentives to add new generating capacity in the PJM region when, but only when, it is economical to do so.

Pls.' Brief 7.

On April 12, 2012, the PSC issued Order No. 84,815 (referred to herein, together with associated orders as "the PSC Order"). The PSC Order selected Defendant CPV as the winner of

a competition process and provided incentives for CPV to build a generator facility in Maryland.[4]

The PSC Order required Maryland-based public utilities to enter into contracts with CPV that, in effect, guaranteed the price that CPV would receive for its energy and capacity delivered into the PJM market regardless of the clearing price fixed by the PJM auction process.

According to Plaintiffs, the PSC Order guarantees CPV a fixed capacity price and energy price and also serves to disadvantage out of state generators.  The operation of the alleged PSC scheme, according to Plaintiffs, can be illustrated by a hypothetical example using $286 per MW as the fixed contract price.

    1.   CPV will submit a "low ball" bid,[5] hypothetically $100 per MW.

    2.   Plaintiffs and other generators not based in Maryland will submit bids based on their respective economic considerations, bids substantially higher than CPV's bid.

    3.   Utilizing the bids made, including CPV's "low ball" bid, PJM fixes a price of (hypothetically) $167 per MW rather than a higher price that would

---

[4]    As literally stated in the PSC Order, the facility could be built in a defined area that included part of Maryland and the District of Columbia.  Plaintiffs allege that there was no possibility of any site in the District of Columbia.  In any event, CPV is located in Maryland.

[5]    That is a bid lower than would be made if CPV did not have the guaranteed $286 per MW contract price.

have resulted without CPV's "low ball," for hypothetical purposes, assumed to be $200 per MW.

4.   Accordingly, all generators selling in the PJM Market must sell at $167 per MW.

5.   CPV, Plaintiffs and other generators, therefore, receive from their customers in the PJM Market, $167 per MW.

6.   However, CPV receives the $119 difference (the "Delta") between $286 and $167 from the Maryland utilities for all of its sales in the PJM Market.

7.   The Maryland utilities, although forced to subsidize CPV to the extent of the "Delta" of $119 per MW of CPV's sales into the PJM Market, benefit because the CPV "low ball" bid caused a reduction in the price paid to generators other than CPV.

   a.   Thus, Maryland utilities pay CPV $119 per MW for CPV's sales in the PJM Market, but receive the benefit of a $33 per MW reduction of the cost of each MW they buy from a generator other than CPV.

   b.   In view of CPV's relatively small share of the PJM Market, the Maryland utilities have a net gain.

   c.   The PJM Market generators not based in Maryland sustain a detriment (hypothetically $33) with regard to each MW they sell into the PJM Market.

II.  DISMISSAL[6] STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6)[7] tests the legal sufficiency of a complaint. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice.  Id.  A complaint must allege sufficient facts to "cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

---

[6]    The PSC Defendants entitle their motion as "Motion to Dismiss or Alternatively Motion for Summary Judgment."  However, they present no reason for the Court not to dismiss the summary judgment motion as premature.
[7]    All "Rule" references herein are to the Federal Rules of Civil Procedure.

III.   DISCUSSION

Plaintiffs present, for the Court's consideration, the Superseding Memorandum and Order issued by Judge Sheridan in PPL Energyplus LLC v. Solomon, No 11-745, 2011 WL 5007972 (D. N.J. Oct. 20, 2011) (the "New Jersey case").  Judge Sheridan denied dismissal of a complaint that – except for certain New Jersey specific facts – presents essentially the same claims as the Complaint here at issue.  Of course, Defendants disagree with Judge Sheridan's decision and offer criticism for his alleged failure to address certain matters.

The Court finds Judge Sheridan's statement of the basic principles perfectly adequate, will quote extensively from his decision and will also extensively paraphrase his well-written remarks.


A.   Issues Presented

Plaintiffs seek to have the Court enjoin enforcement of the PSC Order, contending that the PSC Order unconstitutionally violates the Supremacy Clause and the dormant aspect of the Commerce Clause.  By the instant motions, the Defendants seek dismissal of all claims.

As discussed below, Defendants state that "Maryland has merely provided legal incentive to business in its borders" and seek to rely on the market participation exception to the

Commerce Clause.  Defs.' Reply 24.  Defendants contend that
"[b]oth of these legal arguments made here assume all of the
factual allegations in this Plaintiffs' Complaint . . . are
true."  Id.  However, Defendants do not, in reality, assume the
truth of Plaintiffs allegations together with the plausible
inferences that Plaintiffs seek to have drawn based on those
"facts."  Rather, they seek to have the Court view the alleged
facts as they – rather than Plaintiffs – would wish.

When the Court views the alleged facts as it must in the
present context, there is a plausible claim that the PSC Order
violates the Supremacy Clause and the Commerce Clause.

B.   Supremacy Clause Preemption Claims

As stated by Judge Sheridan:

> The preemption doctrine is rooted in the
> Supremacy Clause of the United States
> Constitution.  See Gade v. Nat'l Solid
> Wastes Mgmt. Ass'n, 505 U.S. 88, 108 (1992).
> N. J. Dec. at 8.  "Under the Supremacy
> Clause, federal law may supersede state law
> in several different ways."  Hillsborough
> County, Fla. v. Automated Med. Labs., Inc.,
> 471 U.S. 707, 713 (1985).

Solomon, slip. op. at 8.

In the instant case, as in the New Jersey case, Plaintiffs
plead that the state action (here the PSC Order) is preempted
because it (1) "intrudes on FERC's exclusive jurisdiction to
regulate wholesale transactions for capacity and energy," and

(2) "erects obstacles to FERC's achievement of its regulatory goals in the wholesale capacity and energy markets."  Compl. ¶¶ 82-83; see Solomon, slip. op. at 8.

As stated by Judge Sheridan:

> These allegations correspond to the preemption doctrines of field preemption and preemption based on state law that impedes achievement of federal objectives.  See, e.g., Chamber of Commerce v. Brown, 554 U.S. 60 (2008) (field preemption); Nash v. Florida Indus. Comm'n, 389 U.S. 235 (1967) (preemption based on state law that impedes achievement of federal objectives).
>
> Field preemption and preemption based on state law that impedes the achievement of federal objectives involve similar, but not identical, inquiries.  Field preemption exists when either "the nature of the regulated subject matter permits no other conclusion," or when "Congress has unmistakably so ordained."  Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 143 (1963).  Preemption based on state law that impedes the achievement of federal objectives exists when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Hines v. Davidowitz, 312 U.S. 52, 67 (1941).  Either finding requires a determination of the record and context of the challenged state and federal laws.  See, e.g., Pacific Gas & Elec. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 203-23 (1983); Perez v. Campbell, 402 U.S. 637, 644-48 (1971).

Solomon, slip. op. at 9.

Plaintiffs here, as in the New Jersey case, plead both that the PSC Order intrudes on a field that Congress intended to be

the sole province of FERC, and that the PSC Order erects an obstacle to the achievement of FERC's regulatory goals.  See id.

### 1.   Field Preemption

It appears at least plausible, if not undeniable,[8] that Congress, by enacting the Federal Power Act, delegated exclusive authority to FERC concerning regulations of the transmission and sale at wholesale of electric energy in interstate commerce.  As in the New Jersey case, the question presented is whether Plaintiffs' factual allegations present at least a plausible claim that the PSC Order intruded on FERC's exclusive authority.

Succinctly stated, Plaintiffs contend that the PSC Order operates so as to fix the price paid to CPV.  This, Plaintiffs argue, encroached on FERC's exclusive authority to set that price.

Certainly, it is possible that the Court will, in light of the evidence and the inferences that the Court find reasonable to draw therefrom, disagree with Plaintiffs.  However, at this time, the Court finds plausible Plaintiffs' contention that the PSC Order, and the contracts thereunder, can be viewed as setting the price to be received by CPV and, thus, encroaching a field within the exclusive authority of FERC.

---

[8]    Judge Sheridan stated that the parties had agreed on this point.  Solomon, slip. op. at 9.

2.   <u>Conflict Preemption</u>

As in the New Jersey case, Plaintiffs "claim that, even if the [PSC Order] does not intrude on FERC's exclusive authority, the [PSC Order] impedes the FERC's policy of establishing a market-based approach to setting wholesale energy rates in the mid-Atlantic market."   <u>Solomon</u>, slip. op. at 9-10.

In the instant case, Plaintiffs allege that pursuant to the PSC Order, CPV is able to present a bid in the PJM auction process that is not appropriately market-based.  That is, with a guaranteed receipt of the PSC fixed price, CPV can submit an artificially low bid that will clear the auction and will drive down the PJM fixed price to the detriment of all generators except, of course, Maryland-based CPV.

Of course, Defendants' position may well prevail on a full record.  However, accepting as true the factual allegations in the Complaint and viewing these alleged facts as favorably to Plaintiffs as is reasonably possible, the Court finds the Plaintiffs have adequately pleaded a plausible claim of conflict preemption.

C.   <u>Dormant Commerce Clause</u>

As stated by Judge Sheridan:

> The Commerce Clause grants Congress the
> power to "regulate Commerce with foreign
> Nations, and among the several states . . .
> ." U.S. Const., Art I, § 8, cl.3. The
> Supreme Court has long "recognized that this
> affirmative grant of authority to Congress
> also encompasses an implicit or 'dormant'
> limitation on the authority of the States to
> enact legislation affecting interstate
> commerce." Healy v. Beer Inst., 491 U.S.
> 324, 326 n.1 (1989).

Solomon, slip. op. at 10. "The burden to show discrimination

rests on the party challenging the validity of the statute."

Hughes v. Oklahoma, 441 U.S. 322, 336 (1979).

For present purposes, the term "discrimination" is used to

mean "differential treatment of in-state and out-of-state

economic interests that benefits the former and burdens the

latter." United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid

Waste Mgmt. Auth., 550 U.S. 330, 338 (2007) (internal quotations

omitted).

Plaintiffs have, as they did in the New Jersey case,

presented a credible claim "that the intent and effect of the

[PSC Order] are to discriminate in favor of in-state generation

at the expense of out-of-state generation." Solomon, slip. op.

at 10.

Certainly, Defendants dispute the validity of Plaintiffs'

view of the facts, deny there is any improper discriminatory

effect and present views of the facts and legal theories that

may ultimately prevail. However, as in the New Jersey case,

Plaintiffs have pleaded a plausible claim based upon the

Document Commerce Clause.


IV.   <u>CONCLUSION</u>

     For the foregoing reasons:

          1.    The Motion to Dismiss or Alternatively Motion for
                Summary Judgment filed by the PSC Defendants
                [Document 36] is DENIED.

          2.    Intervenor-Defendant CPV Maryland, LLC's Motion
                to Dismiss [Document 43] is DENIED.


     SO ORDERED, this <u>Friday, August 03, 2012</u>.



                         _____/s/_____
                            Marvin J. Garbis
                         United States District Judge